UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BARBARA MUCHA,<br>    Plaintiff,<br><br>    v.<br><br>NANCY A. BERRYHILL,<br>Deputy Commissioner for Operations,<br>Social Security Administration,<br>    Defendant. | CAUSE NO.: 1:17-CV-429-JEM |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Barbara Mucha, and Plaintiff's Opening Brief [DE 25], filed July 5, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On October 12, 2018, the Commissioner filed a response. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

On February 21, 2014, Plaintiff filed an application for benefits alleging disability beginning January 29, 2014. Plaintiff's application was denied initially and upon reconsideration. On March 7, 2016, Administrative Law Judge ("ALJ") Shane McGovern held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On March 30, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2.    The claimant has not engaged in substantial gainful activity since January 29, 2014,

       the application date.

3. The claimant has the following severe impairments: obesity; diabetes; mild carpal tunnel syndrome on the right; depression; borderline personality disorder; agoraphobia without a history of panic disorder and insomnia.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant cannot operate foot controls on the left; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, crouch, kneel, and crawl; frequently handle, finger and feel bilaterally; no exposure to excess vibration; no use of dangerous or moving machinery; no exposure to unprotected heights; she is limited to simple, routine and repetitive tasks not a production rate pace; brief and superficial interaction with the public; occasional interaction with coworkers and supervisors and no work that requires tandem tasks or teamwork.

6. The claimant is unable to perform any past relevant work.

7. The claimant was 45 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 29, 2014, through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d

3

664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III. Analysis

Plaintiff argues, citing to the ALJ's findings at step three of the required evaluation, that the ALJ "erred in overemphasizing Plaintiff's daily activities." Plaintiff appears to challenge the ALJ's factual findings within the listing analysis at step three, and the Commissioner's determination of her residual functional capacity ("RFC") at step five. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The determination of whether a claimant suffers from a listed impairment comes at steps two

and three of the ALJ's analysis. Step two of the ALJ's analysis requires an examination of whether the claimant has an impairment or combination of impairments that are severe. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). A medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). The determination of whether a claimant suffers from a severe condition that meets a listed impairment comes at step three of the sequential analysis. At step three, the ALJ must determine whether the claimant's impairments meet an impairment listed in the appendix to the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). An individual suffering from an impairment that meets the description of a listing or its equivalent is conclusively presumed to be disabled. *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). In order "[f]or a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that manifests only some of the criteria will not qualify, no matter its severity. *Id.*

The ALJ specifically found that Plaintiff's impairments did not meet or medically equal the criteria of Listings 12.04, 12.06, and 12.08. Listing 12.04 describes affective disorders, which are "Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. As relevant in this case, there must be medically documented persistence of a particular mental health syndrome that results in at least two of the "B" criteria: "1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining

5

concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration," or the "C" criteria: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and . . . [r]epeated episodes of decompensation, each of extended duration." *Id*.

The ALJ concluded that the severity of Plaintiff's mental impairment does not meet or medically equal the criteria of Listing 12.04. In particular, the ALJ concluded that Plaintiff had "mild" restriction in activities of daily living, and "moderate" difficulties in the areas of social functioning and concentration, persistence, or pace. With regard to episodes of decompensation, the ALJ found that Plaintiff "had experienced no episodes of decompensation, which have been of extended duration. Since the alleged onset date, the claimant was never psychiatrically hospitalized."

In concluding that Plaintiff had only mild restrictions in activities of daily living, the ALJ cited Plaintiff's testimony that she drives about once a month to doctor appointments, can sometimes wash dishes, can clean her bathroom "one thing at a time," and can tend to her personal care "unless her depression or pain is so bad that it makes her unable to do so." The ALJ did not explain how these facts, with the remaining evidence in the record, support a finding that Plaintiff has only mild restrictions in daily living. The notes of Plaintiff's therapist indicate that Plaintiff consistently isolated herself from others and was frequently unable to walk to her driveway to run an errand. Plaintiff testified that her parents generally drove her to and from appointments and did her grocery shopping. Plaintiff's mother filed a report indicating that Plaintiff could not sustain good hygiene, her apartment was frequently unkempt, and that she does "little or no" housekeeping. The ALJ's cursory discussion of those issues leaves the Court without a logical bridge between the evidence

and his conclusion that Plaintiff had only "mild" restrictions in daily activities. *O'Connor-Spinner*, 627 F.3d at 618; *see Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A decision denying benefits need not discuss every piece of evidence, but if it lacks an adequate discussion of the issues, it will be remanded."); *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) ("[T]he ALJ may not ignore an entire line of evidence that is contrary to the ruling.").

The ALJ also concluded that Plaintiff has had no episodes of decompensation of extended duration. The Listing defines "episodes of decompensation" as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00. These episodes "may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)." *Id*. The ALJ stated that Plaintiff had not been psychiatrically hospitalized since the alleged onset date, but that is not dispositive. Decompensation can "be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system." *Id*; *see also Larson v. Astrue*, 615 F.3d 744, 750 (7th Cir. 2010) ("An incident – such as hospitalization or placement in a halfway house – that signals the need for a more structured psychological support system would qualify as an episode of decompensation, but so would many other scenarios. The listing recognizes that an episode may be inferred from medical records showing a significant alteration in medication.") (citing 20 C.F.R. Pt. 404, Subpart P., App. 1, § 12.00).

In this case, the state's consultative examiner reported in April 2014, after the alleged onset

7

date, that Plaintiff "mostly just stayed in bed" for several months leading to the examination. Plaintiff reported to the examiner that she did not leave her apartment between January and March 2014. In November 2014, Plaintiff reported to her therapist that "she stayed in bed for almost four days," and that she did not feel her medications were working. Although the ALJ summarized the record evidence in his assessment of Plaintiff's mental residential functional capacity at step five, he failed to address these aspects of the record that cast the most doubt on Plaintiff's ability to work, or explain why they were not evidence of episodes of decompensation. For example, with regard to Plaintiff's apparent months of isolation, the ALJ noted in his summary of Dr. Gruen's findings only that Plaintiff reported "isolating herself, sleeping a lot and not liking to be around others. She reported being agoraphobic, but she does have some interactions with her family members and medical professionals." An ALJ "cannot rely only on the evidence that supports [his] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.").

On remand, the ALJ is directed to thoroughly analyze whether Plaintiff's mental impairments meet or medically equal the criteria of a Listing. The ALJ is instructed to assess the record evidence in determining whether Plaintiff satisfies two of the Paragraph B criteria, 20 C.F.R. Pt. 404, Subpt.

P, App. 1 § 12.00, and whether Plaintiff episodes of decompensation, and is reminded that the Listing encompasses "more frequent episodes of shorter duration." *Larson*, 615 F.3d at 750. In addition, if the ALJ determines that Plaintiff's impairments do not meet or medically equal the criteria of a Listing, the ALJ is instructed to draw a logical bridge from the evidence as it actually appears in the record to his conclusions about Plaintiff's RFC, and must thoroughly address the medical evidence in the record, including that which does not support the ALJ's conclusions.

## IV. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 25], **DIRECTS** the Court to enter judgment in favor of Plaintiff, and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 25th day of January, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc: All counsel of record